# ALCOHOLIC BEVERAGES

**STATUTORY INTERPRETATION – HEALTH – FOOD SERVICE FACILITIES – WINERIES – WHETHER THE HOLDER OF A CLASS 4 LIMITED WINERY LICENSE CAN PREPARE CERTAIN LIMITED FOODS FOR SALE OR SERVICE AT THE WINERY**

March 14, 2023

*The Honorable Edward C. Rothstein*
*President, Board of County Commissioners of Carroll County*

Since the repeal of Prohibition in 1933, Maryland has had a detailed scheme of laws that regulate the manufacture, distribution, and sale of alcohol in the State. *See* 1933 Md. Laws, Spec. Sess., ch. 2; *see also* U.S. Const., Amend. XXI (repealing the 18th Amendment and recognizing state regulation of alcohol). That scheme, broadly speaking, establishes a "three tier" system that distinguishes alcohol manufacturers from wholesalers, and wholesalers from alcohol retailers. *See* Department of Legis. Servs., *Regulation of the Alcoholic Beverages Industry in Maryland* 13 (2017) ("*Regulation of Alcohol*"). Licenses for manufacturers and wholesalers are issued by the State's Alcohol and Tobacco Commission ("ATC"), while retail licenses are issued by the local boards of license commissioners in the counties and Baltimore City. *Regulation of Alcohol*, *supra*, at 13; *see also* 99 *Opinions of the Attorney General* 31, 32 (2014).[1]

You have asked for an opinion of the Attorney General regarding the scope of one type of manufacturer's license—the Class 4 limited winery license authorized by § 2-206 of the Alcoholic Beverages Article. Among other things, that provision

---

[1] These sources and others written before 2021 indicate that the State Comptroller is responsible for licensing and regulating alcohol manufacturers and wholesalers. In 2019, the Legislature passed a law creating the Alcohol and Tobacco Commission, *see* 2019 Md. Laws, ch. 12, which, as of 2021, is tasked with issuing manufacturing and wholesaling licenses, and generally enforcing and regulating the State's alcohol laws, *see* Comptroller of Maryland, "Maryland Alcohol [and] Tobacco Commission," https://www.marylandtaxes.gov/divisions/atc/index.php (noting that, "[e]ffective January 1, 2021," the ATC became "authorized to enforce and regulate the state's laws concerning alcoholic beverages") (last visited Mar. 8, 2023). The Comptroller continues to have authority over alcohol taxes. *See Alcohol & Tobacco Tax Joint Annual Report by the Alcohol and Tobacco Commission & Comptroller of Maryland* 1 (2021).

permits a licensee to "sell or serve" only limited types of foods—including, for example, baked goods, cured meats, fruits, and pizza. Md. Code Ann., Alc. Bev. ("AB") § 2-206(b)(5)(iii). You ask whether this subsection allows the license holder to prepare the listed foods on the winery premises for sale or service at the winery or whether the license holder is instead limited to selling or serving food prepared elsewhere. As explained below, we conclude that nothing in AB § 2-206 precludes a limited winery license holder from preparing the foods enumerated in that section on the premises of the winery. But the license holder must still comply with any applicable food service licensing requirements authorized under the Health-General Article.

# I
# Background

## A.   Winemaking and Class 4 Limited Winery Licenses

State law regulating the manufacture, distribution, and sale of alcohol is located in the Alcoholic Beverages Article. Division I of that article contains general and statewide provisions. *See, e.g.*, AB § 1-405 (precluding issuance of licenses for premises unless the premises conform with certain tax requirements and zoning laws, regulations, or ordinances); *id.* §§ 2-201 through 2-219 (laws related to manufacturer's licenses). Division II contains the provisions relevant to local jurisdictions, including all of the counties, Baltimore City, and Annapolis. In addition to authorizing specific alcohol retail licenses for each local jurisdiction, *see, e.g.*, *id.* § 16-803 (Class B beer and wine license in Carroll County), the provisions in Division II also authorize jurisdiction-specific exemptions from some of the general provisions in Division I, or tailor those general provisions in certain ways,[2] *see id.* § 1-202(b) ("A provision in Division II of this article prevails over a conflicting or inconsistent provision in Division I of this article or

---

[2] Notably, while the General Assembly has, through laws enacted in Division II of the Alcoholic Beverages Article, added variations to Class 4 limited winery licenses issued under § 2-206 in certain jurisdictions, there is no local jurisdiction in which that class of manufacturing license is entirely inapplicable. *See, e.g.,* AB §§ 16-401(c)(1), 16-403 (providing that the Class 4 limited winery license applies in Carroll County, and that a license holder that applies for a Class A wine license is exempt from certain license population quota limitations); § 25-407(b) (providing that, in Montgomery County, the "restrictions under § 2-206(b)(5)(iii), (6)(ii)"—the food service provisions—"do not apply to a [Class B-BWL (clubhouse/lodge)] license issued under this subsection").

a provision in the Tax-General Article relating to alcoholic beverages."); *compare, e.g.*, *id.* § 2-208 (providing, in Division I, for a Class 6 Pub-Brewery License), *with id.* § 9-401(b) (providing, in Division II, that a Class 6 Pub-Brewery License does not apply in Allegany County). We focus here, of course, on the provisions governing limited winery licenses that are codified in AB § 2-206.

The General Assembly first created the Class 4 limited winery license in 1951. *See* 1951 Md. Laws, ch. 276. That law, among other things, made changes to the ordinary "three tier" system to allow the holder of a rectifying, winery, or brewery license to apply for and obtain a wholesaler's license. *Id.* By 1973, the Legislature appeared to recognize that, in addition to operating as manufacturers and wholesalers of alcohol, wineries occupied space in the State's agricultural and tourism industries as well. Thus, the General Assembly amended the Class 4 limited winery license provision so that wineries could engage in, to some extent, the activities of all three tiers of Maryland's system of alcohol regulation—manufacturing, wholesaling, and retailing.[3] *See* 1973 Md. Laws, ch. 593 (allowing holders of Class 4 limited winery licenses to "sell wine made from products grown in Maryland at a retail price at the plant to persons participating in a guided tour of the facility"); *see also Regulation of Alcohol*, *supra*, at 7 (noting that "[i]n the last several decades, economic forces have prompted manufacturers, wholesalers, and retailers to expand their scope of operations, causing a partial melding of the three tier system"). In light of these laws, one historian of Maryland wine has suggested that "wineries don't easily fit into th[e] three-tier system, as they are a unique business model that happens to be a manufacturer, a wholesaler and quite often a retailer of its own product." Regina McCarthy, *Maryland Wine: A Full-Bodied History* 87 (2012).

Maryland had nine wineries by 1984, McCarthy, *supra*, at 65, and throughout the 1990s and early 2000s, the industry continued to grow, *id.* at 68, 72. In 2004, the Secretary of Agriculture appointed the Maryland Wine and Grape Advisory Committee ("Wine & Grape Committee") to "investigate the Maryland wine industry and learn how to promote its growth." *Id.* at 89. The Wine

---

[3] In some instances, a manufacturer may need additional alcoholic beverage licenses in order to act as a wholesaler or retailer. *See, e.g.*, AB § 2-307 (providing for Class 6 limited wine wholesalers' licenses, which holders of Class 4 limited winery licenses may obtain). However, "[e]xcept as provided in Subtitle 3"—the subtitle governing wholesalers' licenses—"a [Class 4 limited winery] license holder need not obtain any other license to possess, manufacture, sell, or transport wine or pomace brandy." *Id*. § 2-206(b)(4).

& Grape Committee issued a report the next year detailing fifty-five recommendations aimed at "mak[ing] Maryland a welcome and attractive state for investors to plant vineyards and open wineries" and "moderniz[ing] liquor laws related to wine making and marketing." Maryland Wine & Grape Advisory Committee, *Maryland Wine: The Next Vintage* 1 (2005) ("*Next Vintage* Report"). Among the recommendations for "[l]egislative changes to foster industry growth," the Wine & Grape Committee urged that laws be enacted to "[e]nable Maryland wineries to establish a restaurant on the winery's premises." *Id.* at 18-19. The committee explained that "[a]s tourist destinations, wineries need the ability to add related attractions to their site in an effort to further promote their product in an ideal setting," and that on-site restaurants would "facilitate longer visits and extend wineries' opportunities to market their wines to consumers." *Id*. at 19.[4]

In 2005, the General Assembly created the Governor's Advisory Commission on Maryland Wine and Grape Growing ("Wine Commission").[5] *See* 2005 Md. Laws, ch. 319. Among other things, the Wine Commission was charged with "provid[ing] a forum to address the issues that are relevant to wineries and grape growers" and "identify[ing] strategies to facilitate growth of viticulture of the state." *Id.* In 2008, the Wine Commission issued a report titled "Impediments to Growth," which flagged specific statutes and regulations that the Commission believed were impeding the growth of wineries and vineyards in Maryland.[6] McCarthy, *supra*, at 91.

The recommendations in the Wine Commission's 2008 report inspired legislation introduced in 2009 that would have created, in

---

[4] The report does not explain why, in the Committee's view, wineries were not permitted to establish restaurants on their premises. It is not clear to us whether the law at the time would have prohibited such a practice, at least assuming the winery obtained a Class B alcoholic beverages license, but there is no need to decide that question here in order to respond to your opinion request.

[5] The Wine Commission recently ceased to function. In 2022, the Legislature repealed the provisions related to the Wine Commission and created the Advisory Commission on Maryland Alcohol Manufacturing, which focuses on a broader range of alcohol manufacturers, including breweries and distilleries. *See* 2022 Md. Laws, ch. 462; *see also* Md. Code Ann., Econ. Dev. §§ 5-2101 through 5-2112.

[6] Although the Wine Commission's 2008 Report appears to have been central to the drafting of amendments to AB § 2-206 considered in 2009 and 2010, we have been unable to locate this 2008 report.

a number of different counties, a "Class W winery license." *See, e.g.*, H.B. 351, 2009 Leg., Reg. Sess. (First Reader) (Washington County); H.B. 772, 2009 Leg., Reg. Sess. (First Reader) (Carroll County); *see also Hearing on H.B. 772 Before the House Econ. Matters Comm.*, 2009 Leg., Reg. Sess. (Feb. 23, 2009) (written testimony of Barbara J. Beverungen, Manager, Carroll County Tourism). Under the legislation, a Class W license would have issued only to those already holding Class 4 manufacturing licenses, and would have, among other things, explicitly allowed the licensee to "sell and serve food incidental to the sampling of wine" and "maintain tables, chairs, and other appropriate indoor and outdoor furnishings to enable patrons to consume wine and food." H.B. 772, 2009 Leg., Reg. Sess. (First Reader). These bills that proposed establishing a Class W license received an unfavorable report in committee, and the legislation did not pass.

Then, in 2010, the General Assembly enacted the Maryland Winery Modernization Act. 2010 Md. Laws, ch. 355. Like the bills introduced in 2009, that law was informed by the recommendations in the Wine Commission's 2008 report. *See Hearing on S.B. 858 Before the House Econ. Matters Comm.*, 2010 Leg., Reg. Sess. (Apr. 6, 2010) (written testimony of the Department of Agriculture). Among other things, the Act added the explicit food service provision, now found in AB § 2-206(b)(5)(iii), that we are being asked to interpret in this opinion. 2010 Md. Laws, ch. 355. As introduced, Senate Bill 858 allowed a license holder to "sell or serve" only specific, enumerated types of food, including, for example, bread and other baked goods, chili, cured meats, hard and soft cheeses, pizza, and soup. S.B. 858, 2010 Leg., Reg. Sess. (First Reader). According to a floor report, this list was based on the foods sold and served at existing wineries at the time. Floor Report, House Econ. Matters Comm., S.B. 858, 2010 Leg., Reg. Sess., at 5 ("House Floor Report").

During the legislative process, Senate Bill 858 was amended, at the urging of the agency that was then called the Department of Health and Mental Hygiene ("DHMH"), to specify that "nothing in this subsection limits the application of relevant provisions of Title 21 of the Health-General Article, and regulations adopted under that title, to a licensee." Amend. No. 774239/1, S.B. 858, 2010 Leg., Reg. Sess., at 2-3 (Senate Educ., Health, & Env't Affairs Comm.). DHMH explained that the proposed amendment would "clarify that a winery that serves or sells food is required to obtain a license issued by the department," given that "[m]any of the foods listed in the bill that the licensee may offer are potentially hazardous and require careful handling to prevent cross

contamination and the growth of pathogenic microorganisms." *Hearing on S.B. 858 Before the Senate Educ., Health, & Env't Affairs Comm.*, 2010 Leg., Reg. Sess. (Mar. 5, 2010) (written testimony of DHMH).

In 2016, the Legislature moved the provision for Class 4 limited winery licenses to § 2-206 of the newly created Alcoholic Beverages Article. 2016 Md. Laws, ch. 41. The language of the statute did not change in any substantive way. *See id.* (Revisor's Note). Since then, AB § 2-206 has been amended numerous times, but not in a manner substantively relevant to the section's food service provisions.[7]

Section 2-206(b) currently provides, in relevant part, that a limited winery "license holder may . . . sell wine and pomace brandy produced by the license holder for consumption," and "sell or serve only":

      1. bread and other baked goods;

      2. chili;

---

[7] The General Assembly is currently considering bills that would amend AB § 2-206(b) to expand the food service provisions. Specifically, those bills would add language that "[a] license holder is not limited to selling or serving only the food specified in paragraph (5)(iii) . . . if the license holder . . . is also licensed to operate a food establishment under Title 21, Subtitle 3 of the Health-General Article," *and* meets a certain ratio of receipts as between food and alcohol sales. *See* H.B. 246, 2023 Leg., Reg. Sess. (First Reader); S.B. 322, 2023 Leg., Reg. Sess. (First Reader). Prior to the committee hearing, the House bill's sponsor offered two amendments, one of which, she explained, "clarifies the legislative intent dating back to the Winery Modernization Act of 2010 that wineries are able to 'prepare' and serve foods—such as pizzas, chili, soup, and baked goods." *Hearing Before the House Econ. Matters Comm.* (Feb. 20, 2023) (written testimony of Del. Andrea Fletcher Harrison). On March 13, 2023, the Senate version of the bill passed the Senate floor unanimously after having been amended in the same way as the House version of the bill. As amended, the bill permits wineries to "prepare, sell, or serve" food. S.B. 322, 2023 Leg., Reg. Sess. (Second Reader). Assuming that the bill as amended is ultimately enacted, the question of whether anything in AB § 2-206(b) prohibits a Class 4 limited winery from preparing the foods listed in subparagraph (b)(5)(iii) on-site would presumably be resolved. We emphasize, however, that the bill as amended still includes the proviso that "[n]othing in this subsection limits the application of relevant provisions of Title 21 of the Health–General Article, and regulations adopted under that title, to a license holder." *Id.*

3. chocolate;

4. crackers;

5. cured meat;

6. fruits (whole and cut);

7. hard and soft cheese (whole and cut);

8. salads and vegetables (whole and cut);

9. the following items made with Maryland wine:

    A. ice cream;

    B. jam;

    C. jelly; and

    D. vinegar;

10. pizza;

11. prepackaged sandwiches and other prepackaged foods ready to be eaten;

12. soup; and

13. condiments.

AB § 2-206(b)(5)(i) and (iii).

In addition, "a license holder may conduct" those activities only:

(i) for off-premises consumption of wine and pomace brandy and for sampling, from 10 a.m. to 10 p.m. each day; and

(ii) for on-premises consumption of wine and pomace brandy and sales and service of food on the licensed premises:

    1. from 10 a.m. to 6 p.m. each day; or

    2. if guests are attending a planned promotional event or other organized activity on the licensed premises, from 10 a.m. to 10 p.m. each day.

*Id.* § 2-206(b)(7). Finally, the statute specifically provides that "[n]othing in [subsection (b)] limits the application of relevant provisions of Title 21 of the Health-General Article, and

regulations adopted under that title, to a license holder." *Id.* § 2-206(b)(10).

## B. *Food Service Licensing*

Like the provisions of the Alcoholic Beverages Article, the laws regulating food establishments and food service in Maryland are detailed and complex. Their overarching purpose is to ensure that "all food establishments in this State are constructed, operated, and maintained in a manner that assures that all food manufactured, processed, stored, or prepared for human consumption is done so under conditions necessary to protect the public health, safety, and welfare." Md. Code Ann., Health-Gen. ("HG") § 21-303. Consistent with that purpose, the law also requires the Maryland Department of Health ("MDH") to "adopt rules and regulations necessary to carry out the provisions of [the State's food establishment law]," *id.* § 21-304(a)(1), and permits home rule or charter counties and Baltimore City to "adopt and enforce laws, ordinances, and regulations that are consistent with the purposes of [the State law]," including local licensing laws, *id.* § 21-304(c). Those laws, ordinances and regulations, however, may not be "less stringent than [the] rules and regulations adopted under [State law]." *Id.* § 21-304(b); *see, e.g.*, Baltimore City Health Code, §§ 6-101 through 6-802.

Under the Health-General Article, a "food establishment" means a "food service facility" or "food processing plant." HG § 21-301(f). A "food service facility," in turn, is broadly defined to mean "[a] place where food or drink is prepared for sale or service on the premises or elsewhere" or "[a]ny operation where food is served to or provided for the public, with or without charge." *Id.* § 21-301(h)(1); *see also* COMAR 10.15.03.02B(34)(b) (providing examples of food service facilities, including restaurants, coffee shops, taverns, and a "food operation in an industry . . . in which food or drink is prepared for sale or for service on the premises or elsewhere"). MDH regulations, however, provide that facilities that "offer[] only prepackaged foods that are not potentially hazardous" as defined by regulation are *not* considered food service facilities. COMAR 10.15.03.02B(34)(c)(i).[8]

---

[8] MDH regulations also specify that certain other types of facilities, including, for example, a "[f]ood preparation or serving area where food is prepared or served only by an excluded organization," do not qualify as food service facilities for purposes of Title 21, Subtitle 3 of the Health-

Generally, to operate a food establishment, a person must be licensed by MDH. HG § 21-305(a). In practice, however, the required license is typically issued by a county health department acting under authority provided by HG § 21-304(b) and (c)—unless MDH determines, after a hearing, that the licensee is not in compliance with State law, in which case MDH must "act to ensure that the food establishment and its operator comply with [State law]." *Id.* § 21-305(d); *see also* Maryland Department of Health, Office of Food Protection, *Facility & Process Review*, https://health.maryland.gov/phpa/OEHFP/OFPCHS/Pages/plan-review.aspx (last visited Mar. 8, 2023) (explaining that "many of the responsibilities for retail food are delegated to the local health departments, including facility licensing and inspection").

The license application form must include the applicant's name and address, the location and type of the proposed food establishment, and "any other information [MDH] requires." HG § 21-306. In order to qualify for a license, an applicant must comply with the requirements of State law, agree to permit access for any required or permissible inspections, and pay the licensing fee, unless exempt. *Id.* § 21-307. State law allows MDH or a representative to "[e]nter and inspect any food establishment" at any "reasonable time," and a licensee may not refuse to grant access to the facility or interfere with an inspection.[9] HG § 21-313.

With this general background in mind, we turn to your question of whether a Class 4 limited winery license holder may prepare food on the winery premises or whether, as the memorandum prepared by your County Attorney suggests, a Class

---

General Article. COMAR 10.15.03.02B(c)(iii). However, none of these other exceptions appear to implicate wineries, which are not an "excluded organization" as defined in Maryland's Code or by MDH regulations. *See* HG § 21-301(e) (defining "excluded organization" to mean a volunteer fire company or nonprofit fraternal, civic, war veterans', religious, or charitable organization or corporation that does not serve food to the public more often than four days a week but which may, once a year, serve food to the public for up to thirty consecutive days); COMAR 10.15.03.02B(28) (same).

[9] State law also imposes numerous "miscellaneous" obligations on food service facilities. *See, e.g.*, HG § 21-325 (providing toilet and lavatory requirements for food service facilities), § 21-326 (requiring food service facilities that "prepare[] food and provide[] seating for patrons" to post a "diagram or illustrative directions" for choking rescue maneuvers), § 21-330.2 (requiring food service facilities to "display prominently in the staff area . . . a poster relating to food allergy awareness").

4 license prohibits food preparation on the premises because the General Assembly did not, in the County Attorney's view, intend to allow wineries to operate as food service establishments. Memorandum of Timothy C. Burke, Carroll County Attorney, at 2 (Dec. 20, 2022) ("Burke Memorandum").

## II
## Analysis

To answer your question, we must interpret AB § 2-206 and determine, as best we can, the intent of the Legislature in enacting it. In doing so, we start with the statute's plain language. *See Pabst Brewing Co. v. Frederick P. Winner, Ltd.*, 478 Md. 61, 75 (2022). If the text is "unambiguous and clearly consistent with the statute's apparent purpose," we generally end our inquiry into legislative intent and apply the statute as written. *Id.* "We 'neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute, and we do not construe a statute with forced or subtle interpretations that limit or extend its application.'" *Id.* (quoting *Lockshin v. Semsker*, 412 Md. 257, 275 (2010)). Further, we consider the statute at issue "within the context of the statutory scheme to which it belongs." *Id.* Because we presume that the General Assembly "intends its enactments to operate together as a consistent and harmonious body of law," we also "seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope." *Id.* at 75-76 (quoting *Lockshin*, 412 Md. at 276).

The text of AB § 2-206 does not explicitly authorize a Class 4 winery to prepare food. It simply provides that license holders may "sell or serve only" a list of sixteen enumerated types of foods. AB § 2-206(b)(5)(iii). But just because subparagraph (b)(5)(iii) does not *expressly* permit food preparation does not necessarily mean that food preparation is *precluded*.

Rather, in authorizing Class 4 wineries to "sell or serve" certain types of food, the General Assembly seems to have implicitly recognized that such a winery might prepare some of those foods on-site, so long as the winery had the necessary license for food preparation. That becomes clear when one examines the list of foods that licensees are permitted to "sell or serve" under the statute. Several of the listed foods either explicitly refer to preparation—such as "fruits (whole and *cut*)" or "hard and soft cheese (whole and *cut*)"—or are of the type that typically would require some form of preparation, such as heating—such as chili, pizza, and soup. Although the references to cut fruits and cheeses

could in theory refer to pre-prepared foods that had been cut elsewhere, the statute separately permits a license holder to sell or serve "prepackaged sandwiches and *other prepackaged foods ready to be eaten*." AB § 2-206(b)(5)(iii)(11) (emphasis added); *see also* COMAR 10.15.03.02B(62)(a) ("'Ready-to-eat food' means food in a form that is edible without washing, cooking, or *additional preparation by the food service facility* or the consumer" (emphasis added)). This suggests that the "cut" fruits, cheeses, salads and vegetables that the subsection permits do not necessarily arrive at a winery in prepackaged, ready to be eaten form; otherwise, there would be no need to list those foods separately from "prepackaged foods ready to be eaten" permitted by (b)(5)(iii)(11). *See Lawrence v. State*, 475 Md. 384, 404 (2021) (explaining that courts "read the statute as a whole to ensure that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory" (cleaned up)).

Although it is possible that some of the listed foods could be prepared elsewhere and then sold and served at the winery, we doubt that the General Assembly expected, in specifically authorizing Class 4 limited wineries to serve hot foods like pizza or chili, that the winery could do so only if it bought those hot foods fully cooked from another facility and then immediately resold them—while still hot—at the winery. *See Marriott Emp. Fed. Credit Union v. Motor Vehicle Admin.*, 346 Md. 437, 445 (1997) ("Common sense must guide us in our interpretation of statutes, and 'we seek to avoid constructions that are illogical, unreasonable, or inconsistent with common sense.'" (quoting *Frost v. State*, 336 Md. 125, 137 (1994))). Consistent with that conclusion, we note that the word "only" in the statute's authorization to "sell or serve only" a list of permissible foods modifies the list and not the phrase "sell or serve." That word placement suggests that the Legislature intended to restrict only the type of food that may be sold or served and did not intend to limit a winery's ability to prepare that limited food for sale or service (assuming, as discussed more below, that the winery has the appropriate license for food preparation).

It is also significant that the text of AB § 2-206(b) contains an explicit reference to Title 21 of the Heath-General Article, the title that governs food, drugs, and cosmetics. Specifically, the statute provides that "[n]othing in [AB § 2-206(b)] limits the application of relevant provisions of Title 21 of the Health-General Article, and regulations adopted under that title, to a license holder." AB § 2-206(b)(10). This cross-reference to food service laws suggests that the General Assembly contemplated that wineries might prepare the foods enumerated in the statute in a way that would

require a winery to obtain a food service license from MDH or the local health department. As noted above, the Winery Modernization Act was amended during the legislative session to add this particular provision, presumably at the behest of DHMH, who explained that "[m]any of the foods listed in the bill that the licensee may offer are potentially hazardous and require careful handling to prevent cross contamination and the growth of pathogenic microorganisms." *Hearing on S.B. 858 Before the Senate Educ., Health, & Env't Affairs Comm.*, 2010 Leg., Reg. Sess. (Mar. 5, 2010) (written testimony of DHMH). Although a food service license can sometimes be necessary even if an entity is merely selling or serving food (and not preparing it on site), *see* HG § 21-301(h)(1) (defining food service facility to include "[a]ny operation where food is served to or provided for the public, with or without charge"), we suspect that, if wineries were entirely precluded from preparing food on their premises, there might have been less reason for concerns like those expressed by DHMH.

The memorandum prepared by your County Attorney compares the text of AB § 2-206 to that of AB § 2-210, which provides for Class 8 farm brewery licenses. Specifically, the memorandum suggests that the language in AB § 2-210(c)(1)(iv) that a license holder may, subject to certain conditions, "sell or serve any food if the license holder is licensed to operate a food establishment under Title 21, Subtitle 3 of the Health-General Article" means that, while the Legislature intended farm brewery license holders to operate as food service facilities, it did *not* intend the same for Class 4 limited winery license holders, given the absence of similar language in AB § 2-206(b). Burke Memorandum at 2.

But we do not read AB §§ 2-206 and 2-210 together in that way. The Class 8 farm brewery license provision contains, like AB § 2-206(b), a limited list of foods that all such license holders are permitted to "sell or serve." *See id.* § 2-210(c)(iii). There are food items on those lists that could conceivably be sold or served by a brewery or winery that is not a licensed food service facility. *See, e.g.*, *id.* § 2-206(b)(5)(iii)(3) and (11) (chocolate and prepackaged foods); *id.* § 2-210(c)(1)(iii)(3) and (14) (same); *see also* COMAR 10.15.03.02B(34)(c)(i) ("'Food service facility' does not include a . . . [f]acility that offers only prepackaged foods that are not potentially hazardous as specified in § B(55)(c) of this regulation."). The language relied on by the County Attorney is part of a separate rule that allows Class 8 farm brewers, if they have a food service license, to "sell or serve" *any* foods, not just the foods listed in subsection (c)(iii). AB § 2-210(c)(iv). The absence

of a similar provision in § 2-206(b), then, does not mean that Class 4 wineries are prohibited from preparing the specific foods identified in that statute. Instead, it means that Class 4 limited wineries are restricted to selling or serving only the foods listed in the statute, *even if a winery also has a food service license*. In other words, neither Class 8 nor Class 4 license holders are precluded from preparing, on the licensed premises, the food that they are entitled to sell or serve, so long as they have a food service license if one is required. Read this way, the two provisions, which deal broadly with the same subject, are "harmonize[d] . . . so that each may be given effect." *Kushell v. Department of Nat. Res.*, 385 Md. 563, 577 (2005).

The legislative history of the 2010 Winery Modernization Act also supports our conclusion that AB § 2-206 does not itself preclude the preparation of the foods listed in subparagraph (b)(5)(iii) on the premises of a Class 4 limited winery. *See In re O.P.*, 470 Md. 225, 255 (2020) ("Review of the legislative history of [a] provision may help confirm conclusions drawn from the text or resolve its ambiguities."). Prior to the amendments enacted in 2010, the provision—then found in § 2-205 of Article 2B—did not refer to food or food service at all.[10] In 2007, our Office was asked whether that version of the statute allowed the Comptroller[11] or a local board of license commissioners to "restrict the sale, service, or consumption of food on [the] licensed premises of a winery in Maryland." Letter from Sandra Benson Brantley, Assistant Attorney General, to Del. Barry Glassman, at 1 (Nov. 2, 2007) ("Brantley Letter"). Our Office concluded that, as long as a winery was serving alcohol only within the parameters of its manufacturing license, "the winery may also serve and sell food without authority granted by the local board of license commissioners or the Comptroller." *Id.* at 2. But, the advice letter explained, "[i]f the winery qualifie[d] as a food service facility under State law, it w[ould] have to be licensed by the local health [department] under the authority of [MDH]" because "the food

---

[10] As is still the case today, a different provision prohibited license holders from "directly or indirectly" giving or offering food "for the purpose of inducing, procuring or influencing" a customer to buy alcohol to drink on the licensed premises, except that license holders were permitted to place "hors d'oeuvres, pretzels, cheese or crackers" on a counter for customers to consume without charge. *See* Md. Ann. Code, Art. 2B, § 12-106 (2005 Repl. Vol.) (now codified at AB § 6-310(a)).

[11] *See supra* note 1.

service aspect is regulated by the local health [department], not the Comptroller or the local board of license commissioners." *Id.*[12]

Thus, in enacting what is now AB § 2-206(b)(5)(iii)—the limited list of foods that Class 4 wineries are permitted to sell or serve—during the 2010 legislative session, the General Assembly would have been legislating on the basis of that 2007 advice from our Office and with the background understanding that the provision, as it existed at that time, did not prohibit wineries from preparing, serving, and selling food so long as they did not do it in a way that the Alcoholic Beverages law expressly prohibited and had any necessary food service license. *See, e.g.*, Md. Ann. Code, Art. 2B, § 12-106 (2005 Repl. Vol.) (now codified at AB § 6-310(a)) (placing restrictions on the provision of free food). And although the intent behind adding the specific list of foods in 2010 was apparently to impose some additional restrictions on the ability of wineries to sell or serve food, the restrictions imposed were very specific, and there is no evidence that they were intended to change a winery's ability to prepare food on its premises, provided the winery stuck to the limited list of foods in the statute.

---

[12] The 2007 advice letter also concluded that "a winery seeking to serve food as well as beer, wine or liquor to additional person[s] beyond those who participated in a guided tour or promotional event would need to seek a Class B restaurant permit from the local board [of license commissioners]." Brantley Letter at 2. A Class B license is an alcohol retail license issued by local boards of license commissioners, typically to hotels and restaurants. *See, e.g.*, AB § 16-803(b) ("The [Class B beer and wine] license authorizes the license holder to sell beer and wine at a hotel or restaurant, at retail, at the place described in the license, for on- and off-premises consumption."). In 2007, when the advice letter was written, the Class 4 limited winery provision authorized retail sale of wine for on-premises consumption only in limited circumstances—i.e., to people "participating in a guided tour of the facility" or "attending a scheduled promotional event or other organized activity at the licensed premises." Md. Ann. Code, Art. 2B, § 2-205(b)(3)(iv) (2005 Repl. Vol. & 2006 Supp.). So in 2007, even assuming a Class 4 limited winery had the MDH permits necessary to operate a restaurant, the winery would have needed additional alcoholic beverages licenses to sell alcohol— including its own wine—at that restaurant. The current Class 4 limited winery provision, however, authorizes broader retail sale of wine and does not require a winery to obtain additional retail licenses to sell wine at retail. *See* AB §§ 2-206(b)(4) (providing that, except in the case of wholesaling, "a license holder need not obtain any other license to possess, manufacture, sell, or transport wine"), 2-206(b)(5)(i) (allowing a license holder to "sell wine and pomace brandy produced by the license holder for consumption").

Numerous documents in the legislative history reveal that the amendments related to food were viewed in that way. For example, a floor report noted that under the bill, a winery "may only serve a very limited menu, based on foods currently served at Maryland wineries." House Floor Report at 5. Similarly, in written testimony, the Maryland Wineries Association explained further that the bill "place[d] reasonable limits on wineries, which ha[d] not existed to th[at] point," including the "limited food menu," and that the limits were "all new restrictions which the Maryland Wineries Association ha[d] accepted as part of creating the consensus statutory framework." *Hearing on S.B. 858 Before the Senate Educ., Health, & Env't Affairs Comm.*, 2010 Leg., Reg. Sess. (Mar. 5, 2010) (written testimony of Patrick H. Roddy, Maryland Wineries Association) ("Roddy Testimony"); *see also id.* (written testimony of Kevin M. Atticks, Executive Director, Maryland Wineries Association) (noting that the bill "[r]estricts food service at a winery to a specific list of food items").

Indeed, the broader context of the Winery Modernization Act supports the Maryland Wineries Association's characterization of the changes to the scope of winery food service as a compromise between various parts of the alcoholic beverage and food service industries. *See* Roddy Testimony at 2 (referring to a "consensus statutory framework"). As noted above, the 2005 *Next Vintage* Report recommended that the Legislature pass laws to "[e]nable Maryland wineries to establish . . . restaurant[s] on their . . . premises" in order to "facilitate longer visits and extend wineries' opportunities to market their wines to consumers." *Next Vintage* Report at 18-19. But, as our Office opined in 2007, nothing in the Class 4 limited winery license provision as written at that time precluded Class 4 wineries from selling and serving food, assuming they had any food service licenses that might be required. *See* Brantley Letter at 2. Thus, in 2009, when the Class W legislation allowing wineries to "sell and serve food" only "incidental to the sampling of wine" was introduced, the Wineries Association advocated for removing the "language regarding food service," in light of "[a]dvice from [an] Assistant Attorney General not[ing] that Article 2B is not the proper place to regulate food." *Hearing on H.B. 772 Before the House Economic Matters Comm.*, 2009 Leg., Reg. Sess. (Feb. 23, 2009) (written testimony of Kevin M. Atticks, Executive Director, Maryland Wineries Association); *see also* H.B. 772, 2009 Leg., Reg. Sess. (First Reader). By the time the 2010 legislation was introduced, however, the Wineries Association was apparently ready to accept "reasonable limits" on *what* food may be served—and *when* that food may be served—at Class 4 limited wineries. *See* Roddy Testimony at 1-2.

Taken together, then, the history and context of the 2010 legislation suggest that the Legislature intended to separate Class 4 wineries from traditional restaurants, but to do so in very specific ways that do not necessarily address food preparation—that is, by imposing limitations on the *type* of food available for sale or service, as specified in AB § 2-206(b)(5)(iii), and by limiting the hours of food service operation, as set forth in subsection (b)(7). The House Floor Report explained that the "operational limits" placed on Class 4 wineries, including the more limited hours of operation and limited food menus, were intended to make it so those wineries could not compete with local restaurants. House Floor Report at 5. Written testimony on behalf of the Maryland Wineries Association stated that the "goal" of the proposed legislation was to allow "Maryland wineries to be manufacturers with exceptions, not to be restaurants, and not to be bars and taverns." Roddy Testimony at 1. The Wineries Association explained further that the bill "separate[d] wineries from bars and taverns by, for the first time, restricting retail operations from 6:00 p.m. until closing at 10:00 p.m." and "distinguishe[d] wineries from restaurants by restricting them in the food items they can sell," a limitation that was "totally new" and "in addition to any zoning or health department food handling restrictions." *Id.* These very specific limitations do not regulate where the food is actually prepared, let alone preclude food preparation on winery premises entirely.

One of the primary arguments against the 2010 legislation, advanced by the Maryland Restaurant Association, was that allowing Class 4 limited wineries to sell or serve certain enumerated foods essentially rendered those wineries indistinguishable from restaurants. *See Hearing on S.B. 858 Before the Senate Educ., Health, & Env't Affairs Comm.*, 2010 Leg., Reg. Sess. (Mar. 5, 2010) (written testimony of Melvin R. Thompson, President, Maryland Restaurant Association) ("Thompson Testimony") (maintaining that the "expansion into food sales . . . goes beyond the winery's core business" and had led to questions of whether "granting such privileges to wineries would put nearby restaurants and cafes at a competitive disadvantage"). To illustrate its point, the Restaurant Association noted that "the fact that a couple visiting a winery may choose to purchase a pizza at the winery instead of at a nearby pizza shop [wa]s troubling." *Id.* at 1.

Regardless of the merits of such critiques, however, the fact is that there is no suggestion in the legislative history that the General Assembly intended to go further than the express limits imposed on the type of food that wineries could serve and the hours that they could do so and to also preclude food preparation on

winery premises.  *See Pabst Brewing Co.*, 478 Md. at 75 (courts cannot "add []or delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute," or "construe a statute with forced or subtle interpretations that limit or extend its application").

In fact, the General Assembly was presented with a suggested amendment that would have clearly implicated—and restricted— food preparation but failed to take any action on that measure.  In its written testimony, the Maryland Restaurant Association advised that it opposed the bill unless amended to "restrict wineries to selling and serving only prepackaged foods that are sold or served directly to customers in such packaging."  Thompson Testimony at 1.  The Restaurant Association explained that "[f]rom the very beginning, [it] told [the Wineries Association] that [it] would have no problem with legislation that limited the sale of food to prepackaged products only," and that the Restaurant Association was "surprised in January when [it] saw hot foods listed in a revised draft version of the bill."  *Id.* at 2.  That Senate Bill 858 was not amended as suggested by the Restaurant Association is more evidence that the intent of the Legislature was to put some distance between wineries and full-fledged restaurants by restricting (1) the food items that a Class 4 winery can sell or serve and (2) the hours in which sales or service of food can occur, but *not* by restricting how or where the permissible foods are prepared.

That said, even though AB § 2-206 does not preclude a winery from preparing the food listed in the statute on its premises, the statute also does not, standing alone, authorize a winery to prepare, sell, or serve food if circumstances would otherwise require a food service license issued by MDH or under MDH's authority.  The text of the statute is clear on that point:  "Nothing in this subsection limits the application of relevant provisions of Title 21 of the Health-General Article, and regulations adopted under that title, to a [Class 4] license holder."  AB § 2-206(b)(10).  Despite the changes to the Class 4 limited winery license provision since 2007, it remains the case that "the food service aspect is regulated by" this separate regulatory regime, and that if a winery "qualifies as a food service facility under State law"—which may, under some circumstances, be the case even if it is not preparing food on the premises—"it will have to be licensed by the local health [department] under the authority of [MDH]."  Brantley Letter at 2; *see also* HG § 21-305 (license required).

While we do not draw any bright lines as to exactly when and under what circumstances a Class 4 limited winery would need a

food service license—that is for the appropriate regulatory authorities to determine—we observe that the definition of "food service facility" is broad. With limited exceptions, a "food service facility" is "[a] place where food or drink is prepared for sale or service on the premises or elsewhere" or "[a]ny operation where food is served to or provided for the public, with or without charge." HG § 21-301(h)(1); *see also* COMAR 10.15.03.02B(34)(b) (food service facilities include "[a] restaurant, coffee shop, cafeteria, short order cafe, luncheonette, tavern, sandwich stand, soda fountain, retail market, or retail bakery outlet," and "[a] food operation in an industry, institution, health care facility, club, school, camp, church, catering kitchen, commissary, or a similar place in which food or drink is prepared for sale or service on the premises or elsewhere"). *But see* COMAR 10.15.03.02B34(c)(i) ("'Food service facility' does not include a . . . [f]acility that offers only prepackaged foods that are not potentially hazardous as specified in § B(55)(c) of this regulation."). Those Class 4 limited wineries whose food service activities fall within these broad definitions must apply for and obtain the necessary licenses and comply with any applicable regulations governing food service facilities that are included in, or have been adopted under the authority of, Title 21 of the Health-General Article.

### III
### Conclusion

In sum, it is our opinion that AB § 2-206 does not prohibit holders of Class 4 limited winery licenses from preparing the food listed in § 2-206(b)(5)(iii) on the premises of their wineries. Nothing in the text of the statute or the legislative history of the provision suggests that the Legislature intended that Class 4 wineries sell or serve those foods only if they have been prepared elsewhere. At the same time, AB § 2-206 requires that Class 4 license holders comply with Title 21 of the Health-General Article and regulations adopted under that title. Thus, to the extent that a Class 4 winery prepares, sells, or serves food in a manner that would require it to be licensed as a food service facility, it must obtain the necessary licenses from MDH or the local health department, as appropriate.

Anthony G. Brown
Attorney General of Maryland

Sara Klemm
Assistant Attorney General

Patrick B. Hughes
Chief Counsel, Opinions and Advice